May it please the court. Good morning, your honors. My name is Stephen New from Beckley, West Virginia. Stand before this court proudly representing every inmate, prisoner and juvenile detainee in the state of West Virginia in this important action against the governor of the state of West Virginia, Patrick Morrissey and the cabinet secretary of West Virginia's Department of Homeland Defense. Our position is simple. The district court erred in dismissing the plaintiff's claims against these two defendants on the basis of standing this court. The standard of review is de novo. The two primary issues upon which the court granted dismissal was a finding that the plaintiff's claims were not fairly traceable to the governor of the state of West Virginia and the DHS secretary and that the injuries would not be redressed by a favorable decision. May I ask why the head of the Department of Corrections is not a defendant here? Your honor, the head of the Department of Corrections is a gubernatorial cabinet appointee under West Virginia Code 15 A-3-3. And the reason why the commissioner was not included as a defendant in this case, it's easily remediable, but it is the cabinet secretary, the DHS secretary, who under West Virginia Constitution Article 7-18 reports to the governor 10 days prior to the legislature meeting. And so it is the cabinet secretary who reports on corrections from the commissioner to the governor, who then the governor under the West Virginia Constitution develops the budget or a proposed budget to submission to the legislature. So our position is that in as much as the commissioner of DCR under West Virginia... But the secretary's role is purely advisory, is it not? I don't believe that it's purely advisory, particularly under that portion of the... That would come as a surprise to the legislature of West Virginia. What would come as a surprise to the legislature of West Virginia? I believe that the cabinet secretary has much more of a role than to simply be advisory on the matters of corrections. True, the commissioner of corrections carries out the day-to-day operations, but the commissioner of corrections has no ability to propose a budget for corrections to the governor. That comes through the cabinet secretary for the floor. But your clients, I mean, your clients say they were given inadequate food, their showers had only scalding water, these sorts of things. Who can fix that? Isn't it the head of the Department of Corrections who has the authority to fix what is going wrong in these prisons and affecting your clients? Not without adequate funding. Right, but that's their problem to figure out. You don't sue the legislature and ask them to fund something because someone has inadequate food. The court can order the head of the Department of Corrections to provide adequate food. A court can't order the legislature to spend their money a certain way. That's a byproduct of a court order. The problem in this case, your honor, with all due respect, the problem in this case is that these problems, including those maintenance issues, is following. The former commissioner of the Division of Corrections and Rehabilitation on many occasions and her chief of staff approached the previous Homeland Security Secretary, Jeff Sandy, and the governor's chief executive and the governor's office requesting funding, requesting additional funding for the deferred maintenance and the additional funding, the additional funding to address the staffing shortages with correctional officers and the overcrowding. Some funding, all of that was ignored, largely for the entirety of the eight years. What's being ignored is the whole question of standing. We tend to argue the most standing questions over the matter of injury and fact, but the fact is there are three elements that have to be established in proving standing and the second element is causation and the third element is remediation and it seems to me that you face some problems here in terms of traceability and redressability here that you've put these two defendants up there and number one, it's unclear that they caused anything and number two, it's very unclear that they have the capacity to redress anything and that's before we even get into the merits which present all kinds of sovereign immunity problems and ex parte young problems and ad infinitum, but the initial question here is standing and questions of traceability and redressability and those are every bit as important an element of standing as injury and fact. Yes, and I'm happy to tackle those, your honor. In terms of traceability, let's look at traceability of the governor of the state of West Virginia and the Homeland Security secretary. It's traceable to the actions and inactions of the governor of the state of West Virginia for just as eight years, he declared two states of emergency due to understaffing. There was one. Are you claiming that declaring those states of emergency caused these problems? No. Okay, so how is that related to traceability? Traceability in that he has the power, had the power to address problems like we allege here with overcrowding, understaffing and overdue maintenance. No, he doesn't have the power. The legislature has to appropriate the funds and the governor of the state of West Virginia has the ability. The governor of the state of West Virginia proposes a budget to the legislature based upon the recommendation of the cabinet secretaries who submit to him a proposed budget. A lot of governors would be delighted to learn from you that the legislature was obliged to click its heels and spend whatever the government had proposed. But as we all know, there are all kinds of executive budgets, both at the federal and state level, which legislatures have declared dead on arrival. Yes, and under West Virginia's Constitution, Article 7-14 and 7-15, it gives the governor the power to veto those budgets. And frequently during justices eight years, he called for special sessions. For instance, in 2023, there were six corrections bills passed that addressed understaffing. You could sue the governor for pretty much anything that involved the state government, right? Because he could propose a budget to the legislature to spend money in a way that would potentially, if the legislature enacted his budget, give funds to address the problem the way you want it addressed, right? Not just prisons. I mean, anything that requires money from the state. No, we're talking about constitutional entitlements. Why is your theory of traceability and registerability, why is that not where it leads? That someone could sue the governor for anything that requires money in the state because it's traceable and reducible, ultimately to the people who might propose a budget that might go to the legislature. It becomes different when there is constitutional liberties involved here. This is the Eighth Amendment. Tell me why the standing inquiry is different because of the Eighth Amendment. Because it is clearly traceable to the and the Secretary of Homeland Security and the injuries would be redressed by a favorable decision here, just as in the August... Sorry, tell me, tell me, what are your reasons why this situation was different from any other expenditure of state funds? Because there are constitutional liberties involved here. We're going to have governors all over the country dragged into court. And they are. Yeah. And they are frequently, Your Honor. Maybe, but the question is whether they have permissibly dragged into court and you're going to have the governor of West Virginia, for any complaint about any aspect of state government that someone thinks is undefended, we're going to have the governor hauled into court as both the cause and the object of remedy. And the problem here with this sort of lawsuit is it seeks to co-opt both executive authority and dragging the governor into court, but it also is co-opting legislative authority because these lawsuits tend to focus on only one state need, which in your judgment has to do with the prison system. But legislatures are not afforded the luxury of focusing on one state need. They have to juggle priorities. And in addition to the prisons, they've got to look at funding for schools in West Virginia, for colleges, for roads, for hospitals, for Medicaid outlays, for environmental improvement, environmental sanity, for law enforcement. They've got to juggle all kinds of priorities and they have to have prior and they have to have many, many deserving claims for competing against each other. And the problem that the Supreme Court has found with this type of suit is that it seeks to co-opt legislative authority by focusing and asking the courts to focus on one particular area when legislatures have to, in their allocation functions, in their spending functions, have to canvas an array of state needs. And what authority do we have to elevate one particular claim for budgetary outlays over the environment, or over law enforcement, or over schools, or over Medicaid, or over so many other things? This is, you are asking us, in addition to changing this court's law on traceability and redressability, you are asking us to invade the heart of executive authority and legislative authority. And there's a big separation of powers problem that lies at the basis of the standing ruling that the district court made. And that's not even getting into the deliberate indifference standard and the ex parte young standard and the sovereign immunity issues that lie in the event that one even got to the merits. The authority this court has is found at Brown v. Plata, which is a PRLA case from 2011, 563 U.S. 493-131, Supreme Court 1910, which said that the federal government... Was there a three-judge district court panel under the PLRA in this case? Did you sue under the PLRA? No, not under the PRLA. Okay, so this suit is not about that. That's correct. But in Brown v. Plata, the court does have that authority. And to your point, Judge Wilkinson, about whether or not the governor of the state of West Virginia can be hauled into court, this court decided in Jonathan R. V. Justice, 41 F. 4th, 316, the 2022 case involving West Virginia's pitiful foster children. But that case did not address standing, did it? No, it didn't address standing. How can you rely on that case if it didn't discuss standing at all? Governor Justice was appropriately a defendant and remains, Governor Morrissey remains an appropriate defendant in that case. And perhaps the defense lawyers didn't raise the issue of standing. But Governor Justice... But that's pretty crucial, isn't it? I mean, there's a big boulder in the road and it's called standing. And part of the points we've made in our precedent is that the general duty to enforce the law, which every governor has, doesn't confer standing. And where redressability depends upon a third party, here the legislature, that doesn't confer standing because the redressability depends upon a third party's action. And what you're asking us to do is to overlook those precedents and pronouncements in the way of standing and to get on a broad equitable suit that has the court saying what outlays are constitutionally adequate, which parts of the penal facilities are those outlays going to go to, which needs should be met, which prisoners should be released, which should be detained. And this would go on and on and on. And we would be having courts exercising equitable powers over the daily administration of the prison system. And it would be never ending because whatever was proposed would be inadequate and the subject of another appeal. And that's where you're going. And it has problems with standing. It has problems with the precedent. It has problems with separation of powers. It has problems on the merits. Do you understand I have a problem? Sounds like it, Your Honor. Yes, but we still think that we're right. These prisons have been pitiful in West Virginia for over a decade, and the governor, whose job it is to ensure that they run constitutionally permissible, didn't do his job for eight years. He said he turned a cow dung into gold. He lied about a $1.2 billion budget surplus when it was $400 million in the red. Now, Governor Morrissey gets to deal with that. But I understand that Your Honor has a problem with that. But these prisoners still suffer, and the people in charge of ensuring that they don't suffer, do little to nothing, except you may or may not be right, sir, but it is not the suit that you have brought. We believe that it is, Your Honor. I'm into my rebuttal time. You know, I don't ever want to have the last word on anything. So you go ahead now. You're going to get the last word and tell me why everything I said is just crazy. Because the Eighth Amendment, the issue we're here on today is standing, having to do with traceability. This is traceable to the governor of the state of West Virginia. If this court looks only at his actions in August of 2023 and six Senate bills in an interim session that were governor's bills that the governor proposed, $21 million in corrections officers' pay bonuses of $5 to $6 million to alleviate the understaffing that we allege in this case. Those bills alone in August of 2023 prove that Governor Justice possessed the power to address the unconstitutional condition of understaffing. And so that hits on both of the elements that we're here on today in terms of standing traceability to the ability to call a special session, the ability to propose governor's bills, and that addresses only staffing. That doesn't also address the $277 million of overdue maintenance as well as the chronic overcrowding in West Virginia's jails. Have you given some thought to bringing the issues with bonuses and staffing and other such things to the legislature or to the Department of Corrections?  Well, did you? Why did not the thought take hold? Well, we have. We have brought individual suits, Your Honor, to address those. Okay. All right. Thank you. Thank you, sir. Thank you, Mr Ritchie. Good morning, Your Honors. May it please the court. I'm here on behalf of the governor. This case is all about money. Money to remedy alleged overstaffing money to remedy alleged overcrowding money to remedy alleged deferred maintenance. That is the entire essence of the complaint. But the federal court cannot give the remedy plaintiff's seek for several different reasons, least of all against the two high ranking officials sued in this case. The address standing as to the secretary, and I'll address the same as to the governor and the other remaining arguments in our brief. The district court got it right on standing. The harms alleged are not traceable or addressable to the governor because he can only propose appropriations, which lies, of course, with the legislative powers to extent. The complaint seeks some generic non monetary changes, particular collection policies or regs. The governor, of course, lacks the authority over those discreet matters under state law. Under this court's case, disability rights versus McMaster, the court says we need to look to ex parte young principles to analyze standing and plaintiffs here point to the governor's general supervisory authority and nothing else in their complaint. But that's not enough under this court's ex parte young precedent. That's waste management versus Gilmore and more recently in December, King versus Yanka. That's 1 22 at 4 5 39. There is required a special relation between the challenge law and the official's authority. And here that means, as this court has said, it means special relation means responsibility for in proximity to the challenge law. But that's wholly lacking here. The governor, as indicated, lacks the power to appropriate. Of course, he is obligated to propose budgets. He can veto what the Legislature enacts, including line items. But he cannot enact appropriations himself, nor can the governor write correctional policies and regulations, which is my friend Miss Schaefer will talk more about falls to the commissioner of corrections and official that again plaintiff strategically declined to sue in this case. And for these same reasons, the discord was right to conclude that the plaintiff's claim is not redressable by the governor in its briefing. But nowhere in the complaint prayed plaintiffs assert redress ability can be satisfied because the federal court can force the governor to use his pardon or commutation powers to relieve overcrowding. Um, there's many reasons why that's inappropriate, but least of which it's not alleged in the complaint, nor is there alleged, as my friend acknowledged any claim under the P. L. R. A. And this court can affirm for other reasons on the record is indicated by Judge Wilkinson's earlier. There are numerous problems here. We the court fail. The plaintiffs have failed to state a claim, an eighth amendment claim under both the objective and subjective prongs of deliberate indifference. Uh, and specifically here, we think plaintiffs have essentially pleaded themselves out of court by focusing on the subjective intent of the governor to improve the conditions, not simply that he disregarded them. He was actively trying to improve them. And the complaint lists a litany of those actions. And as to the secretary, plaintiffs make no allegations against him at all on the subjective prong required to sustain an eighth amendment claim. And so for that reason, the court can affirm for failure to state a claim. Another aspect of ex parte young and state sovereign immunity is that the court simply cannot order the payment of money, um, to remedy constitutional violation. Uh, here, the payment of state funds is not simply incidental to injunctive relief. It's a simple matter of central essence of the relief being sought by plaintiffs, and I don't think they deny that. And such relief would also violate the 10th Amendment. The federal judiciary cannot commandeer the state legislative and executive machinery to operate state correctional institutions by compelling legislative all of the problems involving sovereign immunity and the application of the deliberate indifference standard in the applicability of ex parte young and all of the rest of that. We don't even, there's no need for us to get into that. Um, because the threshold issue and the one that the district court decided was, was simply, uh, whether Article three is engaged at all through standing. That's correct, Your Honor. So these other things are additional problems. It would appear in short order if they were on the merits, but I don't know that we can. We can do a thing unless we have basic jurisdiction over the case of controversy. And if we don't, then it stops right there. We agree completely, Your Honor. It's simply that if the court does find standing, these issues are available for the multiple issues, but they're not, they don't have to, you know, they're far into the future. Oh, one final comment and I'll take my seat if there are no question. Other questions. Uh, my friend mentioned that their governor sued and other, uh, other cases, other civil rights cases or even prison cases. A couple issues there. Uh, frequently in many of these cases the governor sued alongside other proper prison officials. Uh, but secondly, and perhaps more most importantly, uh, none of those cases discuss standing as the court had mentioned. And so we cannot take anything from those cases where standing is not challenged. Uh, so ultimately it's kind of hard to imagine a greater violation of federalism or the separation of powers. If this case is permitted to a seat, uh, to proceed, the district court should be affirmed. Judging. Thank you. Thank you. All right. Um, Mr Schaefer, we'd be pleased to hear from you. May it please the court. My name is Natalie Schaefer and I, along with my co council, Kimberly Bandy are here on behalf of Robert Cunningham, the interim acting secretary of the West Virginia Department of Homeland Security in this matter. Um, for the same reasons as my friend representing the governor, uh, the secretary, the cabinet secretary is likewise, um, subject to dismissal for the reasons stated by the district court. And we asked this court to affirm the dismissal of the both both defendants under Article three standing the plaintiff in the appeal. Uh, well, plaintiff in the underlying case as well as in the appeal is attempting to assert a class action which has not been certified yet. Um, we haven't gotten to that point yet due to conditions of confinement involving overcrowding, understaffing and deferred maintenance. The court should affirm the reasons for the district court's ruling as to the cabinet secretary for three primary reasons that permeate throughout this matter. One, the complaint fails to identify any policies, procedures or practices that need to be implemented or enforced as requested in the prayer for relief. Second, the secretary, the cabinet secretary does not have any vested authority whatsoever to implement or enforce any policies, procedures or practices as requested in the prayer for relief. And third, the cabinet secretary does not have the vested authority to appropriate or otherwise spend state budget surplus funds as requested in the prayer for relief. That, as the court noted, is the exclusive province of the legislature. Simply put, the plaintiff lacks standing and indeed the complaint itself is self defeating. The plaintiff cannot establish traceability or address ability against the cabinet secretary, despite multiple attempts throughout appellate briefing to invoke additional new arguments in terms of additional avenues for redress or means or methods for redress. I would remind this court, this honorable court, that a review of the complaint is absolutely critical. And this court has specifically held on numerous occasions. When a plaintiff is attempting to seek injunctive prospective relief, such as this matter, it is important that the court review the relief that is actually requested in the complaint, because that is what dictates what is or is not actually achievable or redressable, traceable by the defendants. And that is where the first step of this analysis. Before we get to the merits, that is where this case fails, as the court noted. I would like to point out in my time remaining that in addition to failing to allege any violations of policies or procedures or anything that is systemically widespread that can be addressed by a high level executive, such as the cabinet secretary. I would like to point out that my friend on the other side referenced Jonathan R. versus now Morrissey, which was a case pending in West Virginia in the Southern District, regarding the foster care system. I would like to point out to the court, although certainly not precedential, Judge Goodwin recently, I believe in February of this year, issued an opinion addressing Article three standing, and it is almost exactly on point. Of course, the paradigm is within the foster care system, but the legal paradigm with respect to Article three standing is absolutely a case that you're talking about. This is Jonathan are versus now Morrissey, Governor Morrissey and the Lexus site is 2025 U.S. District Lexus 36435, and Judge Goodwin issued this opinion sui sponte. Nobody raised the issue in briefing, but the judge, Judge Goodwin, pointed out that the federal court is one of limited jurisdiction. It is not to set policy. They do not legislate. They do not principles are not abstractions. They're the foundation of constitutionally established tripartite government, and Article three standing does not permit federal courts to exercise general legal oversight of the legislative and executive branches. Um, this decision and I am out of my time, but I would point out that the one additional comment that Judge Goodwin made and again, not just precedential, but he did state specifically that the federal court cannot write a state budget, higher state employees or oversee child welfare administration for the very purposes and reasons that Judge Wilkerson mentioned earlier because this is a state matter. So unless there are any questions, I'm concluded. Thank you. We thank you very much. Mr. New, please come forward. Happy to hear from you and rebuttal very briefly. Um, this court does not have before it the merits of this action or any other basis. The district court did not dismiss this case on 12 B six grounds for failure to state a claim. It was 12 B one standing only. The court has heard the arguments here and in response to the Cabinet Secretary's counsel, my friend, uh, she said that the Cabinet Secretary has no authority. Uh, it is the Cabinet Secretary, not the commissioner of corrections who submits the corrections budget to the governor 10 days prior to the legislative session. It is not the D. C. R. Commissioner who goes through the governor's office to put the corrections budget in place that is reviewed by and submitted onto the Legislature from the Cabinet Secretary. And in closing, the courts heard the arguments. The court has the power under Supreme Court precedent to correct Eighth Amendment unconstitutional conditions. Courts don't just give up their powers to enforce the Constitution of the United States of America. The executive does not remain unchecked. The legislative does not remain unchecked when there are constitutional harms involved. And if courts give up, God help us everyone. But neither let's let's remember. So you mentioned Article one and Article two and that there are constitutional amendments that courts also enforce. But Article three is what gives courts the power to enforce those. And we reach beyond our authority. Uh, then that's also a problem. We don't have the authority to enforce every constitutional provision that we would like. In any case, you have to show us that there is standing that there is an Article three controversy that is right, that is within our power. So I don't want to take your thunder and you're concluding lines here. But I have to point out that our power is limited as well, just like the executive's power is limited and the legislators limited all by the Constitution. And we believe that we have shown traceability and redress ability on the issue of standing alone because neither of these appellees have the right to violate the United States Constitution. Thank you very much. All right, we thank you and we will adjourn. I want to thank courtroom deputy for the fine job that she done and also want to say what a pleasure it is to have Judge Yoon with us for her inaugural sitting and she's off to a great start on the district court and we'll come down and we'll adjourn court and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States in this honorable court. Yeah.
judges: J. Harvie Wilkinson III, Allison J. Rushing, Jasmine Hyejung Yoon